T.C. Memo. 1999-257


UNITED STATES TAX COURT


HAROLD F. AND BARBARA J. SWIATEK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10978-97.                    Filed August 4, 1999.


Harold F. Swiatek and Barbara J. Swiatek, pro sese.

<u>Deborah Stanley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $95,283 and a section 6662 accuracy-related penalty in the amount of $19,057.

The dispute in this case centers on respondent's determination that petitioners had $295,315 of unreported income in 1991, and

that $271,836 of this amount is attributable to payments Harold F. Swiatek (petitioner) received from Jose Garcia and/or from two of Mr. Garcia's businesses. Petitioners maintain that these payments were loans. Thus, the issue for decision concerns the characterization (loan or income) of the $271,836 petitioner received from Mr. Garcia and/or his businesses in 1991.[1]

All section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Miami, Florida, at the time they filed their petition.

Retail Automation Inc. Credit Corp.

Retail Automation Inc. Credit Corp. (RAI), located in Hackensack, New Jersey, was a finance company which purchased installment sales contracts from retailers. In 1989, petitioner

---

[1] Petitioners failed to address $23,479 of the total amount of unreported income determined by respondent. We treat this failure as a concession by petitioners that they did in fact receive $23,479 of unreported income during 1991.
Respondent concedes the sec. 6662 accuracy-related penalty.

became the vice president of RAI, receiving annually a salary of $100,000 and a car allowance of $2,000. He was responsible for conducting all of RAI's operations, which included sales, marketing, advertising, credit, collection, and dealer relations.

Jose Garcia (Mr. Garcia) was a client of RAI. He sold, financed, and installed alarm and security systems to consumers in South Florida, doing business as AVD Security Systems (AVD) and Lauren Investments (LI). Mr. Garcia regularly sold his installment contracts to RAI.

While visiting Mr. Garcia's businesses on RAI's behalf in April 1991, petitioner was offered the position of president of a bank Mr. Garcia and others were creating in South Florida. Petitioner accepted Mr. Garcia's offer.

Mr. Garcia agreed to advance money to petitioner in order to facilitate petitioners' move from their home in Pennsylvania to Florida. These advances were to be interest free until January 1, 1994, at which time interest would be applied to any unpaid balance at the rate of 6 percent per annum.

In November 1991, petitioners moved to Florida. Between October and December 1991, petitioner assisted Mr. Garcia in preparing for the opening of the bank, which was scheduled to occur on January 6, 1992.

Mr. Garcia's Business Arrangements

Mr. Garcia embezzled funds from RAI by submitting false installment contracts. By the end of August 1991, petitioner became aware of the situation but nonetheless failed to take any action to stop Mr. Garcia's behavior.

Payments Made to Petitioners

During 1991, petitioner received a total of $271,835.58 (rounded to $271,836) from Mr. Garcia and/or AVD and LI, as follows:

| Date | Amount |
|---|---|
| 5/14 | $751.92 |
| 5/14 | 1,584.95 |
| 5/14 | 1,303.52 |
| 6/5 | 4,356.14 |
| 6/25 | 2,846.76 |
| 7/3 | 2,242.24 |
| 7/5 | 2,832.66 |
| 7/12 | 2,257.32 |
| 7/17 | 2,247.18 |
| 7/30 | 2,103.06 |
| 8/1 | 30,000.00 |
| 8/9 | 30,000.00 |
| 8/16 | 30,000.00 |
| 8/29 | 30,000.00 |
| 9/13 | 2,392.97 |
| 9/13 | 30,000.00 |
| 10/9 | 15,000.00 |
| 10/9 | 2,483.32 |
| 10/16 | 20,000.00 |
| 10/16 | 2,597.15 |
| 10/21 | 15,000.00 |
| 10/23 | 2,417.51 |
| 11/8 | 2,362.82 |
| 11/13 | 2,417.92 |
| 11/14 | 1,300.00 |
| 11/21 | 2,502.67 |
| 11/21 | 1,300.00 |
| 11/27 | 2,641.00 |

| | |
|---|---|
| 12/5 | 15,126.12 |
| 12/13 | 1,300.00 |
| 12/13 | 2,749.43 |
| 12/23 | 5,118.92 |
| 12/23 | <u>2,600.00</u> |
| Total | 271,835.58 |

No notes were given and no collateral was received with respect to these payments.

## Petitioners' Real Estate

During 1991, petitioners owned two condominiums in Pennsylvania, a condominium in New Jersey, and a condominium in Florida. The aggregate equity in these properties totaled approximately $245,000. After petitioner agreed to accept the position in Florida, petitioners decided to sell their four condominiums.

On October 30, 1991, petitioners purchased a house in Kendall, Florida, for $375,000. The payments petitioner received from Mr. Garcia and/or AVD and LI were used for the following purposes: $115,000 to purchase the Kendall house, $70,000 to purchase furniture, an undisclosed amount to remodel the Kendall house, and the remaining amount to pay petitioners' attorneys.

## Mr. Garcia's Disappearance

In early January 1992, Mr. Garcia informed petitioners that the bank would never open. Contemporaneously, Mr. Garcia fled Dade County, Florida.

## RAI Lawsuit

Sometime in 1992, RAI filed a lawsuit against petitioners and others, alleging fraud with respect to Mr. Garcia's falsified contracts. RAI sought $6 million in damages. Petitioners defaulted, and judgment was entered against them.

## Guilty Plea

Criminal charges were brought against petitioner as a result of his involvement in defrauding RAI. Petitioner pled guilty to conspiring to commit mail fraud. He was sentenced to 2 years in Federal prison but served only 17 months. In addition, he was ordered to pay $7,169,210 in restitution to RAI. (His obligation to RAI was joint and several with that of the other co-conspirators.)

## Federal Income Tax Return

Petitioners did not report the $271,836 petitioner received from Mr. Garcia and/or AVD and LI on their 1991 tax return. Moreover, they did not report any income petitioner received from his work between October and December 1991 in setting up the bank.

## Petitioner's Bankruptcy

On November 1, 1993, petitioner filed for bankruptcy. He listed Mr. Garcia as having a $270,000 unsecured nonpriority claim. Mr. Garcia did not file a proof of claim.

On February 8, 1994, petitioner received a discharge in bankruptcy.

Notice of Deficiency

On February 28, 1997, respondent issued a notice of deficiency increasing petitioners' 1991 taxable income by $295,315, attributing $271,836 of this amount to payments petitioner received from Mr. Garcia and/or AVD and LI.  Respondent also determined a section 6662(a) accuracy-related penalty but, as noted, now concedes the penalty.

ULTIMATE FINDINGS OF FACT

The $271,836 petitioner received from Mr. Garcia and/or AVD and LI in 1991 were loans.

OPINION

The issue for decision centers on the characterization of the $271,836 petitioner received during 1991 from Mr. Garcia and/or AVD and LI.  Petitioners maintain that these payments were loans; respondent contends they constitute income.

Whether an advance is characterized as a loan or income is a factual question which we determine by considering the entire record.  See Fisher v. Commissioner, 54 T.C. 905 (1970).  In order for a bona fide loan to exist, two requirements are necessary: (1) A good faith intent to make repayment on the part of the recipient of the funds, and (2) a good faith intent to enforce repayment on the part of the lender of the funds.  See, e.g., id. at 909-910.

Petitioners have the burden to prove that the payments from Mr. Garcia and/or AVD and LI were loans.  See Rule 142(a); Welch v.

Helvering, 290 U.S. 111 (1933). To rule in petitioners' favor, we must be convinced that both petitioner and Mr. Garcia intended the payments to be loans. To perform our task, we must distill truth from falsehood. See Diaz v. Commissioner, 58 T.C. 560, 564 (1972); Arcia v. Commissioner, T.C. Memo. 1998-178.

We carefully observed petitioners at trial and found them to be credible and truthful witnesses. We are satisfied that petitioners sincerely believed a debtor-creditor relationship existed at the time Mr. Garcia provided petitioner with the payments as a short-term bridge loan, on the basis of petitioners' real estate holdings. Relying on these payments, petitioners uprooted and moved south, using the money to purchase a home in Florida as well as to pay for remodeling and furniture. Petitioners regarded this favorable financing from Mr. Garcia as unavailable in the normal course of business. However, they understood that once petitioner began to receive a salary from the bank, he would repay the $271,836 to Mr. Garcia and/or his two businesses.

Petitioner introduced into evidence a copy of a letter, dated April 21, 1991, he wrote to Mr. Garcia which outlined their loan agreement. This letter embodies petitioner's understanding of the loan. (Respondent notes that the letter was not found when police searched Mr. Garcia's residence and businesses. We believe that either it was lost or Mr. Garcia took it when he decided to flee

Dade County.)  In addition, we are mindful that petitioner listed his debt to Mr. Garcia when he filed for bankruptcy protection in November 1993.

We also accept petitioners' testimony that Mr. Garcia had a good faith intent to collect the $271,836. Thus, we find a "consensual recognition" by both petitioner and Mr. Garcia of an obligation to repay.  Cf. <u>Moore v. United States</u>, 412 F.2d 974, 978-980 (5th Cir. 1969).

In sum, we find as an ultimate fact that the $271,836 was a bona fide loan from Mr. Garcia to petitioner in 1991. Consequently, we hold that $271,836 of the amount of unreported income ($295,315) determined by respondent is not includable in petitioners' 1991 income.

To reflect the foregoing and concessions by the parties,

<u>Decision will be</u>

<u>entered under Rule 155</u>.